**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| SHM MARINA BAY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-12688-MJJ |
| | ) | |
| M/Y GEORGIA MAE, Official No. 1102337, | ) | **IN ADMIRALTY** |
| AND ALL OF HER ENGINES, TACKLE, | ) | |
| ACCESSORIES, EQUIPMENT, | ) | |
| FURNISHINGS, | ) | |
| AND APPURTENANCES, *in rem*, | ) | |
| | ) | |
| ROBERT SPENLINHAUER, OWNER OF | ) | |
| GEORGIA MAE, *in personam*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**AND MEMORANDUM OF DECISION**

July 16, 2026

JOUN, D.J.

Plaintiff SHM Marina Bay, LLC ("Plaintiff" or "SHM Marina") owns and operates a commercial wharf facility (the "Wharf") in Quincy, Massachusetts. *See, e.g.*, [Doc. No. 42 at ¶ 1]. Defendant Robert Spenlinhauer ("Defendant" or "Spenlinhauer") docked his vessel, the Georgia Mae (the "Vessel"), at the Wharf from November 2022 through May 2025. [*Id.* at ¶¶ 2–5]; *see also* [Doc. No. 52 at ¶ 1]. SHM Marina brought this *in rem* suit against the Vessel to recover fees owed for maritime storage services, which SHM Marina calculates to be "not less than

$21,879.04." [Doc. No. 1 at ¶¶ 6–13]. While Defendant contests the amount owed, he admits that he "failed to pay the purported amount," but "pa[id] as much as he could." [Doc. No. 12 at ¶ 9].

Plaintiff moved for the issuance of an *in rem* warrant to arrest the Vessel, [Doc. No. 2], which I granted on October 29, 2024. *See* [Doc. No. 11]. Defendant subsequently filed a "Motion for Emergency Hearing in the Matter of Seizure of Property without Proper Notice and Due Process of Law." [Doc. No. 20]. I held a hearing on that motion on June 11, 2025, during which I explained the various options available to Defendant for obtaining the release of either his personal property or the Vessel. [Doc. No. 23]. On June 5, 2026, I conducted a bench trial on Plaintiff's claims for damages against Defendant and the Vessel. [Doc. No. 49]. During the trial, I heard argument from both parties, as well as testimony from one witness called by Plaintiff and two witnesses called by Defendant. *See* [*id.*].

On the day of the bench trial, Defendant filed an "Emergency Motion for Stay Pending Adjudication of Jurisdiction and Stay Violations." [Doc. No. 44]. Since then, Defendant has filed several additional motions. On June 8, 2026, Defendant filed a "Verified Counterclaim and Request for Emergency Injunctive Relief." [Doc. No. 51]. On June 16, 2026, Defendant filed his proposed findings of fact and conclusions of law, under a filing labeled, "First Motion to Alter Judgment, Motion for Preliminary Injunction." [Doc. No. 52]. Most recently, on June 29, 2026, Defendant filed a "Second Motion to Quash for Leave to Leave to Submit Critical Developments in Tax Case," a "Second Motion for Issuance of Letters Rogatory," and a "Motion for Leave to File Clerical Developments in Parallel Tax Litigation." [Doc. No. 53].

For the reasons set forth below, Defendant's motions at [Doc. No. 44]; [Doc. No. 51]; [Doc. No. 52]; [Doc. No. 53] are DENIED. My findings of fact and conclusions of law follow.

2

## I.    MOTIONS FOR STAY AND COUNTERCLAIM

On the day of the bench trial, Defendant presented physical copies of a counterclaim and motion to stay the proceeding, which he electronically filed on June 8, 2026. *See* [Doc. No. 51]. Defendant had also previously filed a separate motion to stay the proceedings on June 5, 2026. *See* [Doc No. 44]. "[C]ounterclaims can only be asserted in a pleading," however, and Defendant's last-minute counterclaim filing came on the day of trial and over 15 months after Defendant filed his answer to the Complaint. *Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc.*, 969 F. Supp. 2d 59, 67 (D. Mass. 2013) (citing Fed. R. Civ. P. 12(1)(B) and 13) (other citations omitted); *see* [Doc. No. 12]. Because Defendant's counterclaim, [Doc. No. 51 at 4], was untimely and improperly pled, I decline to consider it.

Defendant's emergency motions for stay, [Doc. No. 51 at 2]; [Doc. No. 44], are likewise unavailing. In these motions, Defendant asserts that the Massachusetts Housing Court issued a formal Stay of Execution regarding the possession and occupancy of the Vessel on November 1, 2024. [Doc. No. 51 at 2]; [Doc. No. 44]. The Housing Court, however, entered the stay solely because of Defendant's bankruptcy filing, explaining that the housing matter "cannot proceed without a Bankruptcy Court granting relief from stay." [Doc. No. 44-2 at 2]. Defendant similarly relies on the automatic stay imposed by the bankruptcy court, asserting that when the Vessel was arrested on May 16, 2025, the stay protected his assets and bankruptcy estate. [Doc. No. 51 at 2]. A closer review of the record, however, demonstrates that these assertions do not alter the Court's analysis or the outcome of this case.

Although Defendant is correct that the automatic stay initially remained in effect, before the Vessel was arrested, the bankruptcy estate had abandoned its interest in the Vessel, and the automatic stay no longer protected it as property of the estate. On December 11, 2024, the Trustee

in Defendant's federal bankruptcy action filed a notice of intent to abandon the bankruptcy estate's interest in the Vessel. *See In re: Robert Spenlinhauer*, Case No. 13-17191, Doc. No. 2002 (Bankr. D. Mass. Dec. 11, 2024). The Trustee "determined that liquidation of the Vessel would not be fruitful for the estate to pursue, as it has negligible if any net value to the Chapter 7 bankruptcy estate," and thus the Trustee "[sought] to abandon the Vessel in order to prevent any potential liability or burden to the Estate incident to any Estate interest in the vessel." *Id.* at ¶¶ 7–8. The bankruptcy court granted this motion, holding that the Estate's interest in the Vessel "is deemed abandoned as of the [January 30, 2025] hearing." *Id.* at Doc. No. 2011 (Bankr. D. Mass. Feb. 4, 2025). While the First Circuit has not squarely addressed whether abandonment under 11 U.S.C. § 554 removes property from the protection of the automatic stay imposed by 11 U.S.C. § 362, the plain language of § 362 indicates that it does. The statute provides that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). The First Circuit has adopted this reading, noting that the stay applies "only so long as [property] remains in the estate." *In re Jesus Saez*, 721 F.2d 848, 851 (1st Cir. 1983). Because the bankruptcy estate abandoned the Vessel, it ceased to be property of the estate, and the automatic stay no longer applied to it.

After receiving this abandonment order, however, and perhaps out of an abundance of caution, SHM Marina filed a "Motion for Relief from Automatic Stay" in the federal bankruptcy court on April 1, 2025. *See In re: Robert Spenlinhauer*, Case No. 13-17191, Doc. No. 2023 (Bankr. D. Mass. Apr. 1, 2025). The bankruptcy court granted that motion on June 2, 2025, authorizing SHM Marina "to exercise its rights to take possession of the debtor's vessel known as the Georgia

Mae."[1] *In re: Robert Spenlinhauer*, Case No. 13-17191, Doc. No. 2029 (Bankr. D. Mass. June 2, 2025). The Vessel was seized by the U.S. Marshals Service approximately three weeks earlier, on May 16, 2025. *See, e.g.*, [Doc. No. 22 at 1]. Thus, although the arrest preceded the bankruptcy court's formal order granting relief from stay, it occurred after the Vessel had been abandoned by the estate. In my view, that abandonment was sufficient to permit the arrest of the Vessel because it was no longer property of the estate.

Even if abandonment alone were insufficient, the result would be the same. The First Circuit has recognized that retroactive relief from the automatic stay "may be warranted" in appropriate circumstances. *In re Soares*, 107 F.3d 969, 977 (1st Cir. 1997). Those circumstances are present here. Defendant had ample notice of Plaintiff's intent to arrest the Vessel, beginning with SHM Marina's October 22, 2024, email notifying Defendant of its intent to remove the Vessel, *see* [Trial Ex. 9], and continuing with this Court's October 29, 2024, order issuing a warrant for the Vessel's arrest, *see* [Doc. No. 11]. Defendant also acknowledged in his Answer, filed on February 24, 2025, that Plaintiff had "sought to remove the vessel" and that he owed fees to Plaintiff. [Doc. No. 12 at ¶¶ 11–12]. And finally, the bankruptcy court ultimately granted SHM Marina relief from the automatic stay. *In re: Robert Spenlinhauer*, Case No. 13-17191, Doc. No. 2029 (Bankr. D. Mass. June 2, 2025). Although that relief was granted approximately three weeks after the Vessel was arrested, it reinforces the conclusion that, even if abandonment alone did not remove the Vessel from the protection of the stay—a proposition this Court rejects—this is the type of case in which retroactive relief from the automatic stay would be appropriate. For these

---

[1] This Order from the Bankruptcy Court also held: "Nothing in this Order shall be deemed to grant the Movant relief from the automatic stay to collect monetary damages directly from the Debtor, absent further order of the Court."

reasons, Defendant's emergency motions to stay the proceedings, [Doc. No. 44]; [Doc. No. 51], are DENIED.

## II.      MOTIONS TO SUBMIT TAX CASE DOCUMENTS

On June 29, 2026, Defendant filed a "Second Motion to Quash For Leave to Leave to Submit Critical Developments in Tax Case, Second Motion for Issuance of Letters Rogatory, and Motion for Leave to File Clerical Developments in Parallel Tax Litigation." *See* [Doc. No. 53]. Through that filing, Defendant seeks leave to submit supplemental materials concerning developments in his parallel tax litigation, including several exhibits. [*Id.*]. The motion is DENIED. The developments in Defendant's tax litigation, including the purportedly "highly complex" tax computations, [*id.* at ¶ 3], have no bearing on the issues before this Court. Because the proposed supplemental materials are irrelevant to the claims and defenses in this action, they would not assist the Court in resolving the pending matters. *Cf. Covidien LP v. Esch*, 378 F. Supp. 3d 119, 130 (D. Mass. 2019) (denying defendant motion for leave to file supplemental briefing at summary judgment stage because the material was not relevant).

## III.     FINDINGS OF FACT

Plaintiff SHM Marina Bay is a limited liability company that owns and operates a commercial wharf facility in Quincy, Massachusetts. [Doc. No. 42 at ¶ 1]. Defendant Vessel Motor Yacht Georgia Mae (Official Number 1102337), owned by Defendant Robert Spenlinhauer, was present and continuously berthed at SHM Marina's wharf in Quincy from November 2022 through May 16, 2025. [*Id*. at ¶¶ 2–5]. Spenlinhauer and his son resided on the Vessel as their primary residence. [Doc. No. 52 at ¶ 1]. Throughout the period in which the Vessel was docked at the Wharf, SHM Marina provided wharfage services to the Vessel. [*Id*. at ¶ 3]; [Doc. No. 42 at ¶ 6].

6

Spenlinhauer was aware of the wharfage services being provided to his Vessel and he authorized these services. [Doc. No. 52 at ¶ 3]; [Doc. No. 42 at ¶ 7].

SHM Marina issued wharfage invoices to Spenlinhauer totaling $29,237.14 for the period November 2022 through May 16, 2025, and those invoices remain unpaid. [Doc. No. 42 at ¶¶ 9–11]; [Trial Ex. 1]. Although Defendant disputes the amount claimed, he admitted in his Answer that he "failed" to pay the full amount due. [Doc. No. 12 at ¶ 9]. At trial, Defendant offered no evidence demonstrating that SHM Marina's invoices were inaccurate. By contrast, Plaintiff introduced a complete accounting of the charges through Exhibit 1, and Tyler Miller, SHM Marina's manager, testified to the accuracy of those records. *See* [Trial Ex. 1]. Exhibit 1 itemizes the dockage and storage fees assessed from November 2022 through April 2025, as well as Defendant's payment history from November 2022 through February 2025. [*Id.*]. Although Defendant made several partial payments during that period, the evidence establishes that an unpaid balance of $29,237.14 remains due and owing to SHM Marina. [*Id.*].

SHM Marina and Defendant entered into written agreements governing the Vessel's berthing at the Wharf. Defendant executed a Membership Agreement on January 26, 2023, in which he agreed to the applicable terms and conditions, including the remedies available to SHM Marina in the event of a breach. [Trial Ex. 3]. Defendant also executed a Space Agreement on December 29, 2023, which established the winter dockage rates reflected in Plaintiff's invoices. [Trial Ex. 2]. Under that agreement, Defendant granted SHM Marina a lien on the Vessel to secure payment of any fees or damages that remained unpaid when due, including the right to foreclose on the lien. [*Id.*]. The Space Agreement further included a payment authorization, signed and dated by Defendant on January 25, 2023, confirming that all fees were payable to SHM Marina in accordance with the terms of the agreement. [*Id.*].

On October 22, 2024, SHM Marina's manager notified Spenlinhauer by email of his delinquent account and demanded that the Vessel be removed from the Wharf:

> Per all our conversations and emails this year including are [sic] most recent one in early September Georgia Mae needs to leave and will no longer be allowed to remain on this property. At this point you are in your holdover 2023-2024 winter term with no Sumer [sic] contract and a current balance of $21,879.04 owed in dockage with no plan to make a significant attempt to pay it off.

[Trial Ex. 9].

The manager further advised Defendant that, if the Vessel remained at the Wharf after November 1, 2024, SHM Marina would exercise its contractual rights by arresting the Vessel, retaining it in the shipyard, and selling it at auction to satisfy Defendant's outstanding balance. [*Id.*].  On May 16, 2025, the Vessel was arrested by the U.S. Marshals Service at Plaintiff's Wharf. *See, e.g.*, [Trial Testimony from Defendant]; [Doc. No. 35 at 1]; [Doc. No. 42 at ¶ 13]. Since that time, the Vessel has been in the custody of Plaintiff. [Doc. No. 35 at 2]; [Trial Testimony from Plaintiff's Witness, Mr. Tyler Miller]. As the substitute custodian, SHM Marina has incurred expenses totaling "right around $90,000 at this point," according to the SHM Marina manager. [Trial Testimony from Plaintiff's Witness, Mr. Tyler Miller].[2] In addition to offering this testimony at trial, the SHM Marina manager stated that this fee was determined "for the security and storage aspect," including "the liability of [SHM Marina] taking over ownership [and] overseeing [the Vessel]." [*Id.*].

## IV.    CONCLUSIONS OF LAW

This Court has subject matter jurisdiction over this *in rem* admiralty action pursuant to 28 U.S.C. § 1333(1) and Supplemental Admiralty Rule C, and venue is proper in this district because

---

[2] This testimony from Plaintiff's witness, Mr. Miller, is the sole evidence in the trial record supporting the amount of the *in custodia legis* expenses. While Plaintiff asserts in both its trial brief and proposed findings of fact that those expenses total $95,040.00, no trial exhibit directly reflects that amount. *See* [Doc. No. 41 at 2]; [Doc. No. 42 at 3].

the Vessel was arrested in Massachusetts and the wharfage giving rise to Plaintiff's claims was provided here.

Wharfage constitutes a maritime "necessary" within the meaning of 46 U.S.C. § 31301(4) and general maritime law. *See, e.g.*, *Portland Pilots, Inc. v. NOVA STAR M/V,* 875 F.3d 38, 45 (1st Cir. 2017) (holding that while the statute did not define "necessaries" to include wharfage explicitly, the Court examined whether the services played a "role in enabling the vessel to continue in its intended functions"). Because SHM Marina furnished dockage and related services essential to the Vessel's operation and storage, those services constitute "necessaries" under the statute.

The evidence further establishes that SHM Marina provided those necessaries to the Vessel at the direction of its owner or a person authorized to bind the Vessel, as required by 46 U.S.C. § 31341(a). Defendant executed both the Membership Agreement and the Space Agreement, thereby authorizing SHM Marina to provide the wharfage services at issue. *See* [Trial Ex. 2]; [Trial Ex. 3]. Accordingly, SHM Marina holds a valid and enforceable maritime lien against the M/Y *Georgia Mae* for unpaid wharfage pursuant to 46 U.S.C. § 31342. The amount of that lien is $29,237.14, representing the unpaid wharfage charges incurred between November 2022 through May 16, 2025. *See, e.g.*, [Trial Ex. 1]; [Doc. No. 42 at 4].

Following the Vessel's arrest, Plaintiff also served as substitute custodian. As such, Plaintiff is entitled to recover its *in custodia legis* expenses in this *in rem* proceeding. *See Lubricantes Venoco, Int'l., C.A. v. M/V NEVERIS*, 60 Fed. App'x. 835, 842 (1st Cir. 2003). Such expenses receive the highest priority in the distribution of proceeds from the judicial sale of a vessel. *See Fortis Bank (Nederland) N.V. v. M/V SHAMROCK*, 379 F. Supp. 2d 2, 7 (D. Me. 2005). Plaintiff's *in custodia legis* expenses therefore have first priority.

9

Plaintiff's maritime lien for wharfage receives second priority. As the First Circuit has recognized, maritime liens have "uniformly been given preference over secured non-maritime claims of other kinds, both prior and subsequent." *United States v. Flood*, 247 F.2d 209, 212 (1st Cir. 1957). Accordingly, after payment of Plaintiff's *in custodia legis* expenses, Plaintiff's maritime lien for unpaid wharfage is entitled to priority over any non-maritime claims against the Vessel.

Plaintiff is also entitled to prejudgment interest on the unpaid wharfage. Although an award of prejudgment interest in admiralty is not automatic, the general rule is that such interest should be awarded to make the injured party whole. *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196 (1995). I find no exceptional circumstances warranting a departure from that rule. Accordingly, Plaintiff is entitled to prejudgment interest on the unpaid wharfage, calculated from the due date of each unpaid invoice through the date of judgment. The exact rate of prejudgment interest awarded "is a matter committed to the discretion of the court." *Cape Waterman, Inc. v. M/V AVA PEARL*, 542 F. Supp. 3d 106, 117 (D. Mass. 2021) (citations omitted). Here, the 3.91% rate requested by SHM Marina appears reasonable and in line with awarded rates in other admiralty cases in this district. *See, e.g.*, *id.* at 118 (awarding "prejudgment interest at the rate of 5 percent per annum for the time period from the salvage to judgment"); *Joseph v. J.P. Yachts, LLC*, 436 F. Supp. 2d 254, 274 (D. Mass. 2006) (awarding 12% per annum, the rate of prejudgment interest allowed under Massachusetts law).

Based on the foregoing findings of fact and conclusions of law, I find the following:

1. Judgment shall enter *in rem* against the Defendant Vessel M/Y *Georgia Mae*, Official No. 1102337, and all of her engines, tackle, accessories, equipment, furnishings, and appurtenances, comprising: (a) wharfage lien of $29,237.14; (b) *in custodia legis* expenses

10

of \$90,000.00; and (c) prejudgment interest calculated at 3.91% from the date of the Vessel's arrest on the unpaid wharfage to the date of judgment.

2. To satisfy this judgment, the United States Marshal for the District of Massachusetts is authorized and directed to sell the Defendant Vessel at public auction in accordance with Supplemental Admiralty Rule E(9), and to distribute the proceeds of sale, first to Plaintiff's *in custodia legis* expenses, and then to Plaintiff's maritime lien for unpaid wharfage, and prejudgment interest. Any remaining proceeds from sale should be remitted to Spenlinhauer.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge